FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 0 4 2017

JAMES N. HATTEN, Clerk
By
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

GEORGIA STATE CONFERENCE
OF THE NAACP; GEORGIA
COALITION FOR THE PEOPLES'
AGENDA, INC.; PROGEORGIA
STATE TABLE, INC.; THIRD
SECTOR DEVELOPMENT, INC.;
ASIAN AMERICANS
ADVANCING JUSTICE—
ATLANTA, INC.; and JILL BOYD
MYERS,

      Plaintiffs,

v.

STATE OF GEORGIA and BRIAN
P. KEMP, in his official capacity as
Secretary of State for the State of
Georgia,

      Defendants.

CIVIL ACTION FILE

NO. 1:17-cv-1397-TCB

## O R D E R

This case comes before the Court on Plaintiffs' emergency motion

for a preliminary injunction [2]. After careful review of the parties'

submissions and the benefit of oral argument, the motion is granted.

## I.    Background

In February 2017, Tom Price, who had served as the United States Representative for Georgia's sixth congressional district since 2005, resigned that seat in order to become Secretary of Health and Human Services. On April 18, a special election was held in the sixth district to determine who would replace Price in the House of Representatives. Eighteen candidates appeared on the ballot—eleven Republicans, five Democrats, and two independents—but none garnered a majority of the votes. Pursuant to O.C.G.A. § 21-2-501(a), a runoff election between the candidates receiving the two highest numbers of votes—Democrat Jon Ossoff, who received forty-eight percent of the votes, and Republican Karen Handel, who received twenty percent of the votes—will be held on June 20, 2017.

Pursuant to article 2, section 2, paragraph 2 of the Georgia Constitution and O.C.G.A. § 21-2-501(a)(10), the runoff election is deemed a "continuation" of the special election preceding it. Georgia law provides that only those electors who were registered to vote in the April 18 special election are entitled to vote in the June 20 runoff. GA.

CONST. of 1983, art. 2, § 2, ¶ 2; O.C.G.A. § 21-2-501(a)(10). The deadline to register to vote in the April 18 special election was March 20, 2017, the fifth Monday prior to the date of the special election. O.C.G.A. § 21-2-224(b). Thus, residents of the sixth district who did not register to vote on or before March 20 cannot cast a ballot that will be counted in the June 20 runoff.

On April 20, 2017—the day after the final results of the April 18 special election were announced—Plaintiffs[1] filed this lawsuit challenging Georgia's voter-registration scheme as violating the National Voter Registration Act of 1993 ("NVRA"). Specifically, Plaintiffs contend that Georgia's voter-registration requirements are inconsistent with and preempted by 52 U.S.C. § 20507(a)(1), which requires states to "ensure that any eligible applicant is registered to

---

[1] Plaintiffs in this case are five organizations that conduct voter-registration activities within Georgia's sixth congressional district and an individual who attempted to register to vote after moving into the sixth district subsequent to the special election.

3

vote in an election" for federal office if the applicant submits her registration form more than thirty days prior to the election.[2]

According to Plaintiffs, § 20507(a)(1) prohibits states from setting voter-registration deadlines more than thirty days prior to any federal election. They have moved for a preliminary injunction ordering that the registration deadline for the June 20 special election be extended to no earlier than May 22 and that all eligible sixth-district residents who have registered or do register on or prior to May 22 be permitted to cast votes that will count in the runoff election.

## II.   Analysis

This Court has summarized the legal standard governing preliminary injunctions as follows:

> To obtain a preliminary injunction, the moving party must show that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause to the [opposing] party; and (4) if issued, the injunction would not be adverse to the public interest."

---

[2] "Election" is expressly defined in the NVRA to include a "runoff election," and an election for "federal office" is defined to include an election for congressional representatives. 52 U.S.C. §§ 20502(1), (2), and 30101(1)(A) & (3).

*Ga. State Conf. of the NAACP v. Fayette Cty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338, 1342 (N.D. Ga. 2015) (quoting *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005)).

### 1. Likelihood of Success on the Merits

The NVRA was passed pursuant to Congress's authority under Article I, Section 4, clause 1 of the United States Constitution (the "Elections Clause"), which grants Congress final say over "The Times, Places and Manner of holding Elections for" federal offices, including congressional representatives. "The Clause's substantive scope is broad. 'Times, Places, and Manner' . . . are 'comprehensive words,' which 'embrace authority to provide a complete code for congressional elections,' including . . . regulations relating to 'registration.'" *Arizona v. Inter Tribal Council of Ariz., Inc.*, 133 S. Ct. 2247, 2253 (2013) (internal punctuation omitted) (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)).

But Congress's power under the Elections Clause is not unbounded. "[T]he Elections Clause empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them." *Id.* at 2257.

5

"Prescribing voting qualifications . . . 'forms no part of the power to be conferred upon the national government' by the Elections Clause." *Id.* at 2258 (quoting THE FEDERALIST No. 60 (Alexander Hamilton)).

Defendants characterize the voter-registration requirements contained in article 2, section 2, paragraph 2 of the Georgia Constitution and O.C.G.A. § 21-2-501(a)(10) as substantive voter qualifications that are left to the states to set and enforce. "Because state law declares voters that were not eligible to participate in the April 18, 2017 Special Election *ineligible* to participate in the continuation of that contest," say Defendants, "the NVRA is not violated," and Plaintiffs cannot establish a likelihood of success on the merits of their claim. [20] at 6.

In *Inter Tribal Council*, 133 S. Ct. at 2251, the Supreme Court held that an Arizona law requiring concrete evidence that a voter is a citizen was preempted by the NVRA's requirement that states "accept and use" a federal voter-registration form that required the voter only to aver under penalty of perjury that he is a citizen. The Court noted that the presumption against preemption that applies in the context of

the Supremacy Clause is inapposite to Elections-Clause cases, *id.* at 2256–57, and as mentioned above, it expressly observed that the Elections Clause vests Congress with the authority to regulate voter registration, *id.* at 2253, just as it had held more than eighty years earlier, *Smiley*, 285 U.S. at 366.

But the *Inter Tribal Council* Court never reached the precise issue raised by Defendants in this case, which is whether registration itself can be considered a substantive voter qualification. Arizona raised that argument for the first time in its reply brief, and the Court refused to address it, opting instead to "resolve this case on the theory on which it has hitherto been litigated: that *citizenship* (not registration) is the voter qualification Arizona seeks to enforce." 133 S. Ct. at 2259 n.9. Thus, while *Inter Tribal Council* unquestionably lends strong support to Plaintiffs' position in this case, it alone is not dispositive.

Following the decision in *Inter Tribal Council*, the Harvard Law Review observed that "[t]he Court's unclear analysis of the distinction between congressional authority to mandate the times, places, and manner of federal elections and the states' authority to prescribe voter

7

qualifications portends an uncertain future" for the fate of voting legislation. *Elections Clause—Federal Preemption of State Law—Federal Voter Registration—Arizona v. Inter Tribal Council of Arizona, Inc.*, 127 HARV. L. REV. 198, 203 (2013).

Yet however imprecise that distinction may be in some cases, every legal authority the Court has located supports the conclusion that voter registration is not itself a substantive qualification to vote, but rather a procedural "method which an otherwise qualified voter must follow to exercise his or her right to vote." *ACORN v. Ridge*, Nos. CIV. A. 94-7671, CIV. A. 95-382, 1995 WL 136913, at *8 (E.D. Pa. Mar. 30, 1995).

The Supreme Court has so suggested on multiple occasions. *Inter Tribal Council*, 133 S. Ct. at 2253 (holding that the Elections Clause "'embrace[s] authority to provide a complete code for congressional elections,' including . . . regulations relating to 'registration.'") (quoting *Smiley*, 285 U.S. at 366); *Cook v. Gralike*, 531 U.S. 510, 523–24 (2001) (noting that the term "'manner' of [holding] elections . . . encompasses matters like notices, *registration*, supervision of voting, and other

8

requirements as to procedure and safeguards which experience shows are necessary to enforce the fundamental right involved").

Federal circuit courts of appeals have likewise uniformly treated voter-registration procedures as being regulations of the manner of holding elections rather than qualifications. *See, e.g., Fish v. Kobach*, 840 F.3d 710, 750 (10th Cir. 2016) (rejecting the argument "that registration itself . . . is a qualification to vote in Kansas"); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 591 (5th Cir. 2006) ("The 'manner' of elections 'encompasses matters like '. . . registration . . . .'") (quoting *Cook*, 531 U.S. at 523–24); *ACORN v. Miller*, 129 F.3d 833, 836 n.2 (6th Cir. 1997) (noting that while the Elections Clause "does not specifically mention voter registration requirements," Congress has "the authority . . . to regulate voter registration procedures, by virtue of its power to control the 'manner' of holding elections"); *ACORN v. Edgar*, 56 F.3d 791, 793–94 (7th Cir. 1995) ("[T]he 'Manner' of holding elections has been held to embrace the system for registering voters.").

District courts have similarly followed suit in treating registration requirements as pertaining to the manner of holding elections. *See, e.g.,*

9

*Condon v. Reno*, 913 F. Supp. 946, 961 (D.S.C. 1995) (holding that the Elections Clause grants Congress the "authority to regulate voter registration in federal elections"); *United States v. Manning*, 215 F. Supp. 272 (W.D. La. 1963) (upholding Congress's authority to impose voter-registration requirements and rejecting the argument that such regulations affected voter qualifications, noting that such laws are simply "designed to assure the right to vote of electors who are 'qualified under State law' to vote").

A recent decision from the District of Arizona strongly supports Plaintiffs' position in this case. In *Arizona Democratic Party v. Reagan*, No. CV-16-3618-PHX-SPL, 2016 WL 6523427, at *13 (D. Ariz. Nov. 3, 2016), Arizona set a voter-registration deadline thirty-one days before the election if registering by mail and thirty-two days prior if registering in person at the motor-vehicles division. The court held that such a deadline "did not ensure that any applicant who registered to vote 'not later' than 30 days before November 8, 2016 was eligible to vote in the general election," in violation of the NVRA. *Id.*

10

Defendants' cases do not compel a contrary conclusion. The cited cases stand for the uncontroversial proposition that voter qualifications are left to the states, but none supports the conclusion that Georgia's voter-registration scheme is such a qualification.

In addition to the cases discussed above holding or suggesting otherwise, the Court notes that Congress's authority to regulate the manner of federal elections has been held to reach subjects that are decidedly more akin to substantive qualifications than Georgia's voter-registration laws. *See Oregon v. Mitchell*, 400 U.S. 112 (1970) (holding that Congress may set the voting age in elections for federal office, although not in elections for state or local office); *Condon*, 913 F. Supp. at 961 ("That Congress may regulate the age of eligible voters in federal elections—despite the Constitutional grant of authority to states to regulate the qualifications of electors . . . ---essentially forecloses any argument that it is not within Congress' authority to regulate voter registration in federal elections.").

In conclusion, the registration provisions of article 2, section 2, paragraph 2 of the Georgia Constitution and O.C.G.A. § 21-2-501(a)(10)

11

cannot reasonably be deemed substantive voter qualifications but must instead be considered as regulating the manner of holding elections. Article I, Section 4, clause 1 of the United States Constitution permits states to regulate the manner of elections for federal office while making clear that Congress has the final authority to "at any time . . . make or alter such regulations." Congress exercised that authority when it passed 52 U.S.C. § 20507(a)(1), which prohibits states from setting voter-registration deadlines more than thirty days prior to any election for federal office. Georgia's voter-registration laws, as applied to runoff elections, run afoul of this prohibition and are therefore preempted by the NVRA. *Inter Tribal Council*, 133 S. Ct. at 2257, 2260 (noting that "[t]he power the Elections Clause confers is none other than the power to pre-empt" and holding that the NVRA preempted inconsistent Arizona law). Plaintiffs have therefore established that they are likely to prevail on the substantive merits of their claim.

## 2. Irreparable Harm

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th

12

Cir. 1987). "Courts routinely deem restrictions on fundamental voting rights irreparable injury" because "once the election occurs, there can be no do-over and no redress." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). The runoff election to select Georgia's sixth congressional district representative is imminent; indeed, absentee voting has already commenced, and advance in-person voting will begin in less than four weeks. If a preliminary injunction is not granted requiring Defendants to process voter-registration applications received after the previous deadline of March 20, numerous voters who would otherwise be eligible to vote in the runoff will be denied that right. This is a substantial and irreparable harm. *See Common Cause/Ga. v. Billups*, 406 F. Supp. 2d 1326, 1376 (N.D. Ga. 2005) ("Denying an individual the right to vote works a serious, irreparable injury upon that individual.").

Significantly, in the absence of an injunction, it is not only would-be voters like Plaintiff Myers who will suffer irreparable harm, but also organizations such as the five Plaintiff-entities in this case. "This Court has recognized that conduct that limits an organization's ability to

13

conduct voter registration activities constitutes an irreparable injury."
*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1350 (N.D. Ga. 2016).
Accordingly, the Court concludes that all six Plaintiffs have shown that
they stand to suffer irreparable harm absent injunctive relief.

### 3.    Balancing of the Equities

Plaintiffs may obtain a preliminary injunction only by showing
that the injury they will suffer if an injunction does not issue outweighs
the harm to the Defendants if an injunction does issue. *Ga. State Conf.
of the NAACP*, 118 F. Supp. 3d at 1342. As just noted, there is no
question that denial of Plaintiffs' motion will cause Plaintiffs and the
voters they represent to suffer an injury of significant magnitude.

Defendants argue, however, that the grant of injunctive relief will
cause them to suffer greater harm, particularly in light of the proximity
of the runoff. These harms—which include, without limitation,
interruption to the state's election processes, simultaneous runoffs for
state and federal offices being governed by different eligibility
requirements, the potential for voter confusion, and the need to hire
temporary workers to quickly process the backlog of voter registration

14

applications—are documented by the declaration testimony of the director of elections for the Georgia Secretary of State's state elections division) [20-1]; the director of the Center for Election Systems at Kennesaw State University, which provides training, technical support, testing, and other services to state election officials) [20-2]; and the directors of elections for Cobb County [20-3] and Fulton County [20-4], portions of which lie within Georgia's sixth congressional district.

Plaintiffs respond that the administrative burden of which Defendants complain is both "greatly exaggerated" and "largely of Defendants' own making," particularly because Plaintiffs put Defendants on notice on March 31, 2017 that they were in violation of the NVRA. [25] at 2. They further contend that the State has previously addressed similar problems in the weeks leading up to an election without incident. *Id.* at 10–11.

Even if Plaintiffs are mistaken about the extent of, reasons for, or ease of addressing the harm to Defendants if an injunction issues, the Court finds that the burdens cited by Defendants, though not insignificant, do not outweigh the all-but-certain harm Plaintiffs will

15

suffer absent an injunction. As explained by another district judge in this district when confronted with evidence of similar harms:

> The Court certainly appreciates and understands the inconvenience and expense that entering a preliminary injunction may work upon the State and Defendants. The Court, however, is mindful that the right to vote is a fundamental right and is preservative of all other rights. Denying an individual the right to vote works a serious, irreparable injury upon that individual. Given the right at issue and the likely injury caused by not entering a preliminary injunction, the Court finds that the potential injury to Plaintiffs outweighs the harm to the State and Defendants caused by entering a preliminary injunction.

*Common Cause/Ga.*, 406 F. Supp. 2d at 1376.

### 4.   Public Interest

Finally, the Court readily concludes that the public interest is vindicated by granting a preliminary injunction. "By definition, the public interest favors permitting as many qualified voters to vote as possible," and "upholding constitutional rights serves the public interest." *League of Women Voters of N.C.*, 769 F.3d at 247 (internal punctuation omitted).

Plaintiffs have therefore satisfied all four prerequisites to the issuance of a preliminary injunction, and their motion is due to be granted, as set forth below.

## III.   Preliminary Injunction

Having concluded that (1) Plaintiffs are likely to prevail on the merits of their claim, (2) Plaintiffs stand to suffer an irreparable injury if an injunction is not granted, (3) the balance of the equities favors Plaintiffs, and (4) the requested preliminary injunction serves the public interest, the Court orders Defendants to:

(1)   Discontinue applying the registration requirements contained in article 2, section 2, paragraph 2 of the Georgia Constitution and O.C.G.A. § 21-2-501(a)(10) to the June 20, 2017 special runoff election;

(2)   Extend the voter-registration deadline for the June 20, 2017 special runoff election to no earlier than May 21[3]; and

---

[3] At oral argument, Defendants convincingly argued that the extended deadline should be May 21, 2017.

17

(3)    Allow all eligible residents of Georgia's sixth congressional district who have registered or do register to vote on or before May 21, 2017 to cast ballots that will count in the June 20 special runoff election.

The Court finds that it is appropriate to waive the requirement under Rule 65(c) that Plaintiffs post security. *See Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009) ("Despite the mandatory nature of [Rule 65(c)'s] language, federal courts have come to recognize that the district court possesses discretion over whether to require the posting of security. Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right.") (internal punctuation and citation omitted); *see also Fish v. Kobach*, 189 F. Supp. 3d 1107, 1151 (D. Kan. 2016) (waiving bond requirement in voting-rights case), *aff'd* 840 F.3d 710; *Common Cause/Ga.*, 406 F. Supp. 2d 1326 (granting motion for preliminary injunction in voting-rights case without any mention of bond requirement).

18

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' emergency motion for a preliminary injunction [2] is granted on the terms set forth in Section III of this Order.

IT IS SO ORDERED this 4th day of May, 2017.

Timothy C. Batten, Sr.
United States District Judge

19