# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **GEORGIA STATE CONFERENCE OF** | * | |
| **THE NAACP, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **CA No. 1:17cv01397-TCB** |
| **v.** | * | |
| | * | |
| **STATE OF GEORGIA and** | * | |
| **BRIAN KEMP, in his official capacity** | * | |
| **as Secretary of State for the State of** | * | |
| **Georgia,** | * | |
| | * | |
| **Defendants.** | * | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SPECIAL
MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND LITIGATION EXPENSES**

# TABLE OF CONTENTS

I. INTRODUCTION                                                          1

II. BACKGROUND                                                          2

III. ARGUMENT                                                           8

A. Plaintiffs are the Prevailing Party and Entitled to Recover
   Their Reasonable Attorneys' Fees and Litigation Expenses
   Under the NVRA                                                       8

B.  Determining the Lodestar                                           9

C.  Reasonableness of the Hours Expended                              10

1. Time and Labor                                                     13

2. The Novelty and Difficulty of the Legal Issues                    14

3. Time Limitations Imposed by the Client or the
   Circumstances                                                      14

4. The Results Obtained                                               14

5.  The Experience, Reputation, and Ability of the Attorneys         15

D. The Hourly Rates Sought Are Reasonable                             15

E.  The Hourly Rates and Time Spent on the Matter by Plaintiffs'
    Counsel are Reasonable under the Circumstances                    20

F.  The Litigation Expenses Sought by Plaintiffs are Reasonable
    And should be Made a Part of the Court's Fee Award                23

IV. CONCLUSION                                                        24

V.  RULE 7.1 CERTIFICATION                                            26

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ACLU of Ga. v. Barnes*, 168 F.3d 423 (11th Cir. 1999)   10

*Alea London Ltd. v. Am. Home Servs., Inc.*
Case No. 1:09-CV-158-TCB, 2010 WL 11523715
(N.D. Ga. Mar. 3, 2010), *aff'd*, 638 F.3d 768 (11th Cir. 2011)  16

*Andrews v. Autoliv Japan Ltd.*, Civ. No. 1:14-CV-3432-WSD
(N.D. Ga. July 28, 2017)   17

*Bivins v. Wrap It Up., Inc*., 548 F.3d 1348 (11th Cir. 2008)  8

*Blum v. Stenson*, 465 U.S. 886 (1984)   15

*Dowdell v. City of Apopka, Florida*
698 F.2d 1181 (11th Cir. 1983)   23

*Gaylor v. Greenbriar of Dahlonega Shopping Center, Inc.*
Civ. No. 2:12-CV-82-RWS (N.D. Ga. May 27, 2014)  17

*Georgia Advocacy Office v. Reese*
Civ. No. 1:15-CV-03372 (N.D. Ga. May 30, 2017)  18

*Griffin, v. General Mills, Inc.*
157 F. Supp. 3d 1350 (N.D. Ga. 2016)   18

*Hensley v. Eckerhart,* 461 U.S. 424 (1983)  8, 9, 12, 13

*In re Application of: Anna Aleksandrovna Sergeeva*
Civil Action No. 1:13-CV-3437-LMM, Doc. 109-1
(N.D. Ga. October 20, 2015)   17

*Johnson v Georgia Highway Express, Inc*.,

488 F.2d 714 (5th Cir. 1974)        12, 13

*Lambert v. Fulton County, Ga.*
151 F. Supp. 2d 1364 (N.D. Ga. 2000)        23

*Moore ex rel. Moore v. Cook*, No. 1:07-CV-631-TWT
2012 WL 536289 (N.D. Ga. Oct. 31, 2012)        18

*Nat'l Coalition for Students with Disabilities v. Bush*
173 F. Supp. 2d 1272 (N.D. Fla. 2001)        8

*Norman v. Housing Auth. of Montgomery, Ala.*
836 F.2d 1292 (11th Cir. 1988)        10, 12, 16

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*
478 U.S. 546 (1986)        9

*Plumbers & Pipefitters Union v.*
*Brian Trematore Plumbing and Heating, Inc.*,
2013 WL 3816660 (M.D. Ga., July 22, 2013)        23

*Project Vote v. Long*, 887 F. Supp. 2d 704 (E.D. Va. 2012)        8

*Purchasing Power, LLC, v. Bluestem Brands, Inc.*,
2016 WL 1389607 (N.D. Ga. April 6, 2016),
*reversed on other grounds*, 851 F.3d 1218 (11th Cir. 2017)        17

**CONSTITUTIONAL PROVISIONS**

GA. CONST. art. II, § II, para. II        3

**FEDERAL STATUTES AND RULES**

52 U.S.C. § 20510        4, 8, 24

52 U.S.C. § 20507        3

Northern District of Georgia Local Rule Local Rule 54.2.A(2)        1

**GEORGIA STATUTES**

O.C.G.A. § 21- 2-224                                                2

O.C.G.A. § 21- 2-501                                                3

**OTHER AUTHORITIES**

Fulton County Daily Report "Going Rate" Survey
http://data.dailyreportonline.com/GoingRate.asp          16, 17, 21

The Laffey Matrix
http://www.laffeymatrix.com/see.html                              18

PriceWaterhouseCoopers Legal Market Survey
For AmLaw 100 Firms in the Atlanta Legal Market                   21

# I. INTRODUCTION

Plaintiffs are indisputably the prevailing party in this action.  Not only did they obtain an emergency preliminary injunction [Doc. 209] that allowed thousands of eligible Georgians in the Sixth Congressional District to register and vote in the June 20, 2017 special runoff election, but they also obtained permanent relief in the form of a Consent Order [Doc. 42] that will help ensure that eligible Georgians in future federal runoff elections will not be disenfranchised by Georgia's onerous voter registration scheme, which violated of Section 8 of the National Voter Registration Act of 1993.

As the prevailing party in this action, Plaintiffs are entitled to an award of reasonable attorneys' fees and litigation expenses under the National Voter Registration Act of 1993 ("NVRA").

Plaintiffs now submit the detailed specification and itemization of those fees and expenses pursuant to Local Rule 54.2.A(2) and the terms of the Consent Order entered by the Court on November 16, 2017 [Doc. 42], and move the Court for an award of those attorneys' fees and litigation expenses against Defendant Brian Kemp in his official capacity as the Georgia Secretary of State.

## II. BACKGROUND

This was a particularly challenging legal claim, for several reasons.  First, it involved an issue of first impression, requiring the interpretation of the National Voter Registration Act on an issue that has not previously been addressed, and reconciling the mandates of the NVRA with both the complex State regulatory scheme governing Georgia elections and the constitutional claims advanced by the Defendants.  Second, the case was prepared and litigated under extraordinary time pressure.  Because of the urgency of the case, Plaintiffs' counsel had to conduct a factual and legal investigation to assess the strength of the grounds for bringing the lawsuit before the first round of the election on April 18, 2017 under substantial time pressure.  And then the litigation on Plaintiffs' motion for a preliminary injunction had to be pursued on an expedited basis, in view of the need for relief in advance of the runoff election on June 20.

Governor Nathan Deal first announced that a special election would take place on April 18, 2017 in a Writ of Election issued on February 10, 2017.[1] Under Georgia law, the deadline to register to vote in a special general election is the fifth Monday prior to the date of the election. O.C.G.A. § 21- 2-224(b). Under article 2,

---

[11] Writ of Election issued by Governor Nathan Deal on February 10, 2017, https://gov.georgia.gov/sites/gov.georgia.gov/files/related_files/document/02.10.17 .01.pdf

section 2, paragraph 2 of the Georgia Constitution and O.C.G.A. § 21-2-
50l(a)(10)(a) a runoff election is deemed to be a "continuation" of the general
election preceding it. As a result, Georgia law required that only those electors who
were registered to vote in the Sixth Congressional District special general election
on April 18, 2017 would be entitled to vote in the June 20, 2017 special runoff
election. GA. CONST. of 1983, art. 2, § 2, ¶2; O.C.G.A. § 21-2-50l(a)(l0).  Thus,
eligible Georgians had only a month from the announcement of the Sixth
Congressional District election on February 10, 2017 by Governor Deal to register
for both the April 18 special general election and the June 20 special runoff
election.

Section 8 of the National Voter Registration Act of 1993 ("NVRA"),
however, prohibits states from imposing a voter registration deadline of more than
thirty days in advance of elections for federal offices. 52 U.S.C. §20507(a).  Under
Georgia's registration scheme, eligible Georgians in the Sixth Congressional
District would have been required to register to vote some three months prior to the
June 20, 2017 special runoff election, in violation of the thirty-day limit set forth in
Section 8 of the NVRA.

After making a preliminary determination that Georgia's voter registration
scheme for federal runoff elections violated Section 8 of the NVRA, the Lawyers'

3

Committee sent a notice letter on March 30, 2017 to Brian Kemp, in his capacity as

Georgia's Secretary of State and chief election official, pursuant to 52 U.S.C.

§20510(b)(1) and (2), informing him that that the registration scheme violated

Section 8 of the NVRA [Doc.1-1, Ex. A]. Defendant Kemp declined to take any

remedial action to bring the State into compliance with Section 8 of the NVRA in

response to the Lawyers' Committee's notice letter.

Because none of the candidates received more than 50% of the vote in the

April 18, 2017 special election and it was certain a special runoff election for the

Sixth Congressional District would take place on June 20, 2017, Plaintiffs

commenced this litigation on April 20, 2017 on behalf of five civil rights and civic

engagement groups – the Georgia State Conference of the NAACP, Georgia

Coalition for the Peoples' Agenda, Inc., Asian Americans Advancing Justice –

Atlanta, Inc., Third Sector Development, Inc. and ProGeorgia State Table, Inc. –

with the filing of a Complaint and emergency motions for a temporary restraining

order and preliminary injunction. [Doc. 1 and 2].

After the litigation was commenced, Jill Boyd Myers retained Plaintiffs'

counsel to join the litigation.  Ms. Myers moved to the Sixth Congressional District

after the close of registration on March 20, 2017, and would have been precluded

from registering to vote in the June 20, 2017 special runoff election under the then

existing runoff registration scheme. Plaintiffs' counsel expedited the review of Ms. Myers' claim and came to the conclusion she had a meritorious claim.

This necessitated the drafting and filing of a First Amended Complaint, a motion to supplement the pending emergency motions with a declaration by Ms. Myers and the negotiation of a consent motion with the defendants to file Ms. Myers' declaration on an expedited basis.  The First Amended Complaint [Doc. 17] and motion to supplement the emergency motions with the declaration of Plaintiff Myers were filed on April 25, 2017 [Doc. 19].  The consent motion to supplement the emergency motions was granted by way of a minute order entered by the Court on April 26, 2017.

Defendants filed their response to Plaintiffs' emergency motion for a temporary restraining order and preliminary injunction on April 28, 2017.  [Doc. 20]. The response included factual affidavits by the supervisors of elections in the three counties that would be conducting the Sixth Congressional District special elections, Cobb, DeKalb and Fulton.  *Id.*  The new factual information raised by the defendants in the response to Plaintiffs' emergency motions required Plaintiffs' counsel to investigate the information alleged in the declarations and obtain additional evidence to submit to the Court in the reply brief filed by Plaintiffs' counsel on May 2, 2017. [Doc. 25].  Defendants then filed a sur-reply brief on May

3, 2017 [Doc. 26]. This required Plaintiffs' counsel to review the sur-reply on an expedited basis since the oral argument on the motion would be held the following day on May 4, 2017.

Plaintiffs' counsel, Ira Feinberg of Hogan Lovells, Julie Houk of the Lawyers' Committee, and Bryan Sells, attended the oral argument on the motion set on May 4, 2017. Plaintiffs' counsel divided responsibilities for the argument, with Ira Feinberg taking the lead on the legal issues, Julie Houk taking the lead on the factual issues, and Bryan Sells overseeing the preparation and legal arguments as supervising local counsel.

The Court entered the order on Plaintiffs' emergency motions on May 4, 2017, granting a preliminary injunction extending the voter registration deadline for the Sixth Congressional District election from March 20, 2017 to May 21, 2017. [Doc. 29].  Thereafter, Plaintiffs' counsel undertook efforts to ensure that the supervisors of elections in Cobb, DeKalb and Fulton County were processing voter registration applications received after March 20 and by May 21 in a timely way and were providing eligible Georgians with accurate information concerning the Court's order extending the voter registration deadline for the special runoff election to May 21.  This included reviewing voter registration records produced

by the defendants, showing new registration applicants in the three counties covered by the Sixth Congressional District.

Thereafter, Defendants filed an Answer to the Amended Complaint [Doc. 33] and the parties began work on preparing initial disclosures and the joint preliminary report. Later, counsel for the parties began settlement discussions which ultimately resulted in the entry of a Consent Order on October 17, 2017 [Doc. 42], and resolved the merits of the Plaintiffs' claims.

Although counsel for the parties attempted to reach agreement to resolve the Plaintiffs' claim for attorneys' fees and litigation expenses, these negotiations were unsuccessful.  As a result, Plaintiffs are now moving the Court for an award of their reasonable attorneys' fees and litigation expenses.

Given their successful conclusion of this litigation on the merits by obtaining all of the relief sought by Plaintiffs in the Complaint, Plaintiffs' counsel should be fully compensated for the work they performed and for the litigation expenses they incurred.

## III. ARGUMENT

### A. Plaintiffs Are the Prevailing Party and Entitled to Recover their Reasonable Attorneys' Fees and Litigation Expenses under the NVRA.

Plaintiffs are the prevailing party in this action, and are therefore entitled to the award of attorneys' fees and litigation expenses under the NVRA (52 U.S.C. Section 20510(c)).

Courts have applied the same standards applicable to other federal civil rights fee shifting statutes when considering an award of attorneys' fees under voting rights statutes. *See*, *e.g.*, *Project Vote v. Long*, 887 F. Supp. 2d 704 (E.D. Va. 2012); *Nat'l Coalition for Students with Disabilities v. Bush*, 173 F. Supp. 2d 1272, 1276 (N.D. Fla. 2001). As such, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

Plaintiffs obtained relief on their NVRA claim by first obtaining a preliminary injunction [Doc. 29] and later, by the entry of a Consent Order [Doc. 42] which permanently enjoins the Georgia Secretary of State, his agents and servants from enforcing a voter registration deadline that violates Section 8 of the NVRA.

The successful litigation benefited not only the named Plaintiffs, but thousands of eligible Georgians who were able to register to vote in time to cast

ballots that would count as a vote in the June 20, 2017 Sixth Congressional District special runoff election.[2]

The Consent Order [Doc. 42] will also benefit eligible Georgians who wish to register and vote in federal runoff elections in the future. Plaintiffs are, therefore, entitled to recover a reasonable attorneys' fee and litigation expenses.

**B. Determining the Lodestar.**

Once a court has determined that a plaintiff is a prevailing party entitled to reasonable attorneys' fees and expenses, the starting point for calculating a reasonable fee award is "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Bivins v. Wrap It Up., Inc*., 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This is commonly referred to as the "lodestar," and there is a "strong presumption" that the lodestar represents a reasonable fee. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986).

The lodestar being sought by Plaintiffs here is in the amount of $184,084, which is based upon a total of 351.38 hours, billed at hourly rates ranging from

---

[2] See, "Ahead of runoff, Georgia's 6th District now has almost 8,000 new voters," Atlanta Journal Constitution, May 31, 2017 (http://politics.myajc.com/news/state--regional-govt--politics/ahead-runoff-georgia-6th-district-now-has-almost-000-new-voters/nJNZ5x9gK7LdKJophEPQBL/(Last checked January 12, 2018).

$300 to $650.  The Hogan Lovells litigation team's lodestar totals $79,200 and is based upon work totaling 153.9 hours, billed at hourly rates ranging from $300 to $650. Ex. A, Feinberg Decl., ¶¶19-24, Ex. 1.  Bryan Sells' lodestar totals $16,995 and is based upon a total of 30.9 hours, billed at the hourly rate of $550. Ex. B, Sells Decl., ¶¶17-19, Ex. 1. The Lawyers' Committee's litigation team's lodestar totals $87,879 and is based upon work totaling 166.58 hours, billed at hourly rates ranging from $400 to $650. Ex. C, Rosenberg Decl., ¶¶26-28, 32-33, Ex. 1.

## C. Reasonableness of the Hours Expended

To assist the Court in determining the reasonableness of hours expended, "counsel should . . . maintain[ ] records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the . . . court can assess the time claimed for each activity." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citations omitted). "[A] well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *See Norman v. Housing Auth. of Montgomery, Ala*., 836 F.2d 1292, 1303 (11th Cir. 1988).

The billing summaries evidencing the time spent by each attorney, the general subject matter of the time expenditures and the hourly rates being claimed

are attached to the declarations of Ira Feinberg (Ex. A, Ex. 1) (Hogan Lovells

lawyers' claim); Bryan Sells (Ex. B, Ex. 1) (Bryan Sells' claim); and Ezra

Rosenberg (Ex. C, Ex. 1) (Lawyers' Committee's claim).

The following chart summarizes the time and fees claimed collectively by all

Plaintiffs' counsel during various stages of the litigation:

|  | Phase of Case | Number of Hours | Amount |
|---|---|---|---|
| LCCRUL investigation and client engagement | Pre-suit factual investigation, initial legal research and clients engagement prior | 50.1 | $25,915 |
| Phase 1 | Case Initiation (including preparation of complaint, motion for preliminary injunction, supporting declarations and memorandum of law) | 87.5 | $46,665 |
| Phase 2 | Reply Brief (in support of motion for preliminary injunction) | 74.9 | $37,530 |
| Phase 3 | Oral Argument | 37.88 | $22,754 |
| Phase 4 | Post-injunction Handling of Litigation | 21.1 | $12,020 |
| Phase 5 | Settlement Discussions (including negotiation of consent decree and consideration of Rule 68 offer of judgment) | 43.2 | $19,580 |

| Phase 6 | Preparation of Attorneys' Fee Motion (including legal research on attorneys' fee issues) | 36.7 | $19,620 |
|---------|------------------------------------------------------------------------------------------|------|---------|
| Totals  |                                                                                          | 351.38 | $184,084.00 |

Although the 11th Circuit does not mandate that the reasonableness of fee applications be determined based upon strict adherence to the twelve factors found in *Johnson v Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[3] several of these factors weigh strongly in favor of the reasonableness of the Plaintiffs' fee claim; the results obtained, the novelty and difficulty of the case, the time and labor required, time limitations, and the experience and reputation of counsel may be considered in assessing the reasonableness of the time spent on this matter. *See generally*, *Hensley*, 461 U.S. 424; *Norman*, 836 F.2d at 1299-1302.

---

[3] The twelve *Johnson* factors are:  (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.

### 1. Time and Labor

The "hours claimed or spent on a case ... are a necessary ingredient to be considered," *Johnson*, 488 F.2d at 717.  As noted above, they are viewed as "the most useful starting point for determining the amount of a reasonable fee." *Hensley*, 461 U.S. at 433. In seeking an award of fees, attorneys have an obligation to exercise "billing judgment." *Id.* at 434. In exercising billing judgment, counsel should exclude time devoted to unsuccessful claims, apportion time shared by more than one client and/or case, and should generally avoid billing time that is not fairly attributable to success in the case at hand.

In this case, Plaintiffs have exercised billing judgment by billing for the services they rendered that led to the successful entry of the preliminary injunction, the Consent Order that resulted in permanent relief and the time spent in settlement negotiations and work on the recovery of their fees and costs. As noted in the declarations of Ira Feinberg (Ex. A, ¶¶ 20-21) and Ezra Rosenberg (Ex. C, ¶27, Ex. 1), significant reductions in the fee claim have been made in the exercise of billing judgment, to exclude time that was duplicative, excessive, not sufficiently documented or for other reasons.

### 2. The Novelty and Difficulty of the Legal Issues

This case involved complex state and federal constitutional and statutory issues in a case of first impression. The defense vigorously contested the Plaintiffs' claim, including in the Defendants' response to Plaintiffs' motion for emergency relief, in a sur-reply to Plaintiffs' reply brief, and at the oral argument on May 4, 2017.

### 3. Time Limitations Imposed by the Client or the Circumstances

Because of the compressed schedule for the Sixth Congressional District special general and special runoff elections, time was a constant problem for Plaintiffs' counsel. Plaintiffs' lawyers were required to act quickly in order to win the preliminary injunction on May 4 that provided for an extension of the voter registration deadline in time for the June 20 special runoff election.

### 4. The Results Obtained

As explained above, Plaintiffs achieved excellent results and significant success by obtaining preliminary relief which benefited eligible Georgians in the Sixth Congressional District and permanent relief that will benefit eligible Georgians in all future runoff elections for federal office. Courts have considered the results obtained as one of the most significant factors in determining a fee

14

award under fee shifting statutes, such as the NVRA.  *See*, *e.g.*, *Project Vote*, 887

F. Supp. 2d at 717.

### 5. The Experience, Reputation, and Ability of the Attorneys

The Plaintiffs' litigation team was led by experienced attorneys, including

Ira Feinberg, Ezra Rosenberg, Julie Houk, and Bryan Sells, all of whom have many

years of complex litigation experience, including in voting rights or other civil

rights matters. *See* Ex. A, Feinberg Decl., ¶¶3-7; Ex. C, Rosenberg Decl., ¶¶7-11;

15-18; Ex. B, Sells Decl. ¶¶4-12. The Plaintiffs team was also staffed by several

attorneys with fewer years of litigation experience, namely Paul Wiley, Emily

Goldman and John Powers, but each of these attorneys also have very impressive

credentials as well as several years of litigation experience.  John Powers, in

particular, had many years of voting rights experience as an analyst in the Voting

Section of the United States Department of Justice before joining the Lawyers'

Committee. *See* Ex. A, Feinberg Decl., ¶¶8-10; Ex. C, Rosenberg Decl., ¶¶21-22.

### D. The Hourly Rates Sought Are Reasonable.

Reasonable hourly rates to be used in the lodestar calculation are "calculated

according to the prevailing market rates in the relevant community, regardless of

whether plaintiff is represented by private or non-profit counsel." *See Blum v.*

*Stenson*, 465 U.S. 886, 895 (1984). "A reasonable hourly rate is the prevailing

15

market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *See Norman*, 836 F.2d at 1299. *See also Alea London Ltd. v. Am. Home Servs., Inc.*, Case No. 1:09-CV-158-TCB, 2010 WL 11523715, at *2 (N.D. Ga. Mar. 3, 2010), *aff'd*, 638 F.3d 768 (11th Cir. 2011) (same). The relevant legal community to determine the prevailing market rate is generally the place where the case is filed. *Id*.

In this case, Plaintiffs are requesting the following hourly rates for the legal services provided in this matter:

**Hogan Lovells Lawyers**: Ira Feinberg, Partner: $650; Paul Wiley, Associate: $400; Emily Goldman, Associate: $400; Andrew Harris, Pending Bar Admission: $300 (Ex. A, Feinberg Decl., ¶¶24-25);

**Bryan Sells, Local Counsel**: $550 (Ex. B, Sells Decl., ¶¶20-24);

**Lawyers' Committee Lawyers**: Ezra Rosenberg, Co-Director: $650; Julie Houk, Senior Special Counsel, $550; and John Powers, Counsel: $400 (Ex. C, Rosenberg Decl., ¶¶28-31).

The hourly rates requested are reasonable and within the prevailing market rates for lawyers of "reasonably comparable skills, experience, and reputation" in this legal community of Atlanta. *See*, *e.g*., http://data.dailyreportonline.com/GoingRate.asp (partner billing rates during the

years 2012-2014 ranged from $300-$950/hour, and associates' rates ranged from

$285-$470);[4] *Andrews v. Autoliv Japan Ltd.*, Civ. No. 1:14-CV-3432-WSD (N.D.

Ga. July 28, 2017) (finding that Alston and Bird's customary hourly rates for a

partner and senior associate of $717 and $575, respectively, were reasonable for

the Atlanta metro legal market, with a voluntary 15% reduction in the rates billed

for purposes of this litigation by these attorneys); *In re Application of: Anna*

*Aleksandrovna Sergeeva*, Civil Action No. 1:13-CV-3437-LMM, Doc. 109-1

(N.D. Ga. October 20, 2015) (Atlanta's Bondurant Mixson & Elmore, LLP's  2015

hourly rates for partners litigating the case ranged from $610 (13 years'

experience) to $885 (40+ years' experience), and its hourly rates for associates

ranged from $295 (1 year associate) to $395 (4 year associate)); *Purchasing*

*Power, LLC, v. Bluestem Brands, Inc*., 2016 WL 1389607, *2 (N.D. Ga. April 6,

2016), *reversed on other grounds*, 851 F.3d 1218 (11th Cir. 2017) (finding hourly

rates in 2016 of $650 for partners, $350 for associates and $225 for

paraprofessionals to be "consistent with those charged by competent and

experienced counsel for litigation of this type in the Atlanta metropolitan area");

---

[4] *See also Gaylor v. Greenbriar of Dahlonega Shopping Center, Inc.,* Civ. No.
2:12-CV-82-RWS (N.D. Ga. May 27, 2014) (relying upon the 2013 edition of the
Fulton Daily report "Going Rate" survey).

*Griffin, v. General Mills, Inc.*, 157 F. Supp. 3d 1350, 1355-56 (N.D. Ga. 2016) (finding hourly rates in 2016 of $650 for a partner with 35 years' experience, $455 for an associate, and $170 for a paralegal to be reasonable); *Georgia Advocacy Office v. Reese*, Civ. No. 1:15-CV-03372 (N.D. Ga. May 30, 2017) (awarding hourly rate of $520 to civil-rights attorney Gerry Weber); and *Moore ex rel. Moore v. Cook*, No. 1:07-CV-631-TWT, 2012 WL 5362892, at *4 (N.D. Ga. Oct. 31, 2012) (awarding hourly rate of $475 to civil-rights attorney Gerald Weber).

The *Laffey* Matrix, adjusted for the Atlanta metro legal market, also indicates that the hourly rates being sought by Plaintiffs' counsel are reasonable, particularly in the case of the more senior attorneys, such as Ira Feinberg, Ezra Rosenberg, Julie Houk and Bryan Sells.  *See* Ex. B, Sells Decl., ¶23.

The *Laffey* Matrix hourly rates for June 1, 2017 through May 31, 2018 for the Washington, DC Metro area based upon years out of law school are:

| Year | Paralegal/Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
|------|------|------|------|------|------|------|
| 6/01/17- 5/31/18 | $196 | $359 | $440 | $636 | $717 | $864 |

*See* Laffey Matrix rate chart: http://www.laffeymatrix.com/see.html. Adjusting the *Laffey* Matrix rates to reflect a 74.98% lower cost of living in the Metro Atlanta

area than in the Washington, DC market, results in the following rates for the

period of June 1, 2017-May 31, 2018:

| Year | Cost of Living Adjustment | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
|------|---------------------------|----------------------|-----|-----|------|-------|------|
| 6/01/17- 5/31/18 | 74.98% | $146.96 | $269.18 | $476.87 | $636 | $537.61 | $647.83 |

Another indication of the reasonableness of the hourly rates claimed by

Plaintiffs is the significant reduction in the rates claimed by the Hogan Lovells

litigation team from those the firm normally commands for its work on complex

litigation matters.  Ex. A, Feinberg Decl., ¶¶24-26. As noted in Ira Feinberg's

declaration, the firm's standard hourly rates for 2017 for Mr. Feinberg was $1065

per hour; $600 for Emily Goldman; $490 for Paul Wiley; and $495 for Andrew

Harris. The hourly rates claimed by the firm for the services provided by these

attorneys in this litigation are substantially less, with Mr. Feinberg billing at the

hourly rate of $650 per hour, Emily Goldman and Paul Wiley billing at the rate of

$400 per hour, and Mr. Harris billing at $300 per hour.

The $550 rate being sought by Mr. Sells is also comparable to rates he's

been awarded in other voting rights matters.  *See* Ex. B, Sells Decl., ¶¶21, 24.

**E.  The Hourly Rates and Time Spent on the Matter by Plaintiffs'
Counsel are Reasonable under the Circumstances**

Plaintiffs' counsel asked William v. Custer, Esq., a partner with Atlanta's
Bryan Cave LLP to review the reasonableness of the hourly rates claimed by
Plaintiffs' counsel in this matter and the time Plaintiffs' counsel spent working on
the matter. Mr. Custer is a 1986 graduate of the University of Georgia Law School,
has been a member of the Georgia bar since 1986 and has been a partner with
Bryan Cave LLP and its predecessor in Atlanta, Georgia since 1986. Ex. D, Custer
Decl., ¶¶3-5.

Attorney Custer has extensive experience in representing both plaintiffs and
defendants in complex commercial litigation matters, a number of which have
involved claims for attorneys' fees and litigation expenses.  He has also handled a
number of public interest lawsuits representing a wide variety of business and
public interests from the Georgia Banker's Association and the Georgia Chamber
of Commerce to the Georgia State Conference of the NAACP.  Some of these
cases also involved claims for attorneys' fees and litigation expenses. *Id.*

Based upon Attorney Custer's practice experience and personal knowledge
of the billing and collection rates and practices of Bryan Cave LLP and a number
of other law firms, he is personally familiar with hourly billing and collection rates
of lawyers who practice in the Atlanta metro area.  Ex. D, Custer Decl., ¶6.

In connection with Attorney Custer's review of the Plaintiffs' motion for attorneys' fees and litigation expenses in this matter, he reviewed hourly rate information available from the online billing rates database of the Fulton County Daily Report, http://data.dailyreportonline.com/GoingRate.asp. Ex. D, Custer Decl., ¶7.  He also reviewed the legal market survey data available from PriceWaterhouse Coopers ("PWC") for AmLaw 100 firms in the Atlanta legal market in 2015. As of January 1, 2016, this survey data includes the following partner and associate standard hourly billing rates: *Partner Average Billing Rate (first and third quartiles presented):* $633-$761/hour; *Range for associates who were in the class of 2015 (first and third quartiles presented):* $319-$377; *Range for associates who were in the class of 2014 (first and third quartiles presented):* $327-$418; *Range for associates who were in the class of 2013 (first and third quartiles presented):* $347-$442; *Range for associates who were in classes prior to 2006 (first and third quartiles presented):* $476-$577. Ex. D, Custer Decl., ¶8.  Mr. Custer also reviewed a number of cases in the United States District Court for the Northern District of Georgia, Atlanta Division, in which courts have made attorneys' fee awards in recent years. Ex. D, Custer Decl., ¶9.

Based upon his background, experience and review of the materials described in his declaration, Attorney Custer opines that the hourly rates claimed

by Plaintiffs' counsel are reasonable and within the range of rates charged by attorneys of like experience and skill in the Atlanta legal market. Ex. D, Custer Decl., ¶¶10-12.

Mr. Custer also reviewed the facts and circumstances of the litigation, from its initial stages to the filing of the instant motion, in connection with his review of the reasonableness of the time spent by Plaintiffs' counsel in this matter. Ex. D, Custer Decl., ¶14.  Based upon Mr. Custer's background and experience, as well as his review of the materials described in his declaration, Attorney Custer opines that the time expended by Plaintiffs' counsel on the matter was reasonable under the circumstances. Ex. D. ¶15-21.

In particular, Mr. Custer notes that the skill and experience of Plaintiffs' counsel, including their particular expertise in voting rights litigation, allowed them to work very quickly in this matter on a compressed time schedule to obtain an outstanding result, not only for their clients in the litigation, but relief that benefited thousands of eligible Georgians in the Sixth Congressional District who were able to submit voter registration applications as a result of the Court's extension of the voter registration deadline for the June 20, 2017 special runoff election, and relief which will benefit eligible Georgians who wish to register and vote in future runoff elections for federal offices. Ex. D, Custer Decl., ¶13.

**F. The Litigation Expenses Sought by Plaintiffs are Reasonable and should be made a Part of the Court's Fee Award.**

The prevailing party in an NVRA claim is also entitled to an award of its litigation expenses.  The Eleventh Circuit has recognized that in awarding litigation expenses, "the standard of reasonableness is to be given a liberal interpretation." *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1190 (11th Cir. 1983).  As a result, "the Eleventh Circuit and district courts in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research." *See Lambert v. Fulton County, Ga.*, 151 F. Supp. 2d 1364, 1371 (N.D. Ga. 2000); *see also Plumbers & Pipefitters Union v. Brian Trematore Plumbing and Heating, Inc.*, 2013 WL 3816660, at *6 (M.D. Ga., July 22, 2013) (holding that expenses incurred on travel associated with the litigation, copying costs, and transcript fees are recoverable reasonable expenses of litigation).

Plaintiffs seek $4,967.99 in litigation expenses, as detailed in the declarations of Ira Feinberg (¶¶30-31, Ex. 2) and Ezra Rosenberg (¶¶38-39, Ex. 2). These expenses include payments for court fees, process server fees, travel expenses and legal research. As explained in the attached declarations, the legal expenses are reasonable and were necessary to effectively prosecute Plaintiffs' claims in this matter.

## IV. CONCLUSION

As the prevailing party, Plaintiffs are entitled to recover their attorneys' fees and litigation expenses under 52 U.S.C. §20510(c). The amounts sought by Plaintiffs are reasonable and reflect the success on the merits achieved and the time reasonably expended by Plaintiffs' counsel to obtain this result.  Accordingly, Plaintiffs respectfully ask the Court to grant Plaintiffs an award of all the time and expenses claimed in this motion. In sum, the total sought for Plaintiffs' attorneys' fees and litigation expenses is: $189,051.99.  This sum represents $184,084 in attorneys' fees and $4,967.99 in litigation expenses.  Plaintiffs will supplement this Motion to request that the Court award any additional attorneys' fees and expenses Plaintiffs may incur until the final resolution of this case.

Respectfully submitted this 30th day of January 2018.

/s/ Bryan L. Sells
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
bryan@bryansellslaw.com

Ira M. Feinberg**
New York Bar No. 1403849
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

24

Telephone: (212) 918-3509
ira.feinberg@hoganlovells.com

Paul Wiley**
Virginia Bar No. 89673
Emily Goldman
D.C. Bar No. 1032-32
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
paul.wiley@hoganlovells.com
emily.goldman@hoganlovells.com

Ezra D. Rosenberg**
New Jersey Bar No. 012671974
Julie M. Houk**
California Bar No. 114968
John Powers**
District of Columbia Bar No. 1024831
Lawyers' Committee for Civil Rights Under
Law 1401 New York Avenue NW, Suite
400 Washington, D.C. 20005
Tel: (202) 662-8600
Email: erosenberg@lawyerscommittee.org
Email: jhouk@lawyerscommittee.org
Email: jpowers@lawyerscommittee.org

(**Admitted Pro Hac Vice)
*Counsel for Plaintiffs*

25

## VI. CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as approved by the Court in L.R. 5.1.B.

/s/ Bryan L. Sells
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that he has this day filed a copy of the foregoing **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SPECIAL MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES** and supporting documents via the Court's electronic filing system ("ECF"). Notice of this filing was provided to counsel of record for all other parties to this case via ECF.

/s/ Bryan L. Sells
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC

27