IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGIA STATE CONFERENCE
OF THE NAACP; GEORGIA
COALITION FOR THE PEOPLE'S
AGENDA, INC.; PROGEORGIA
STATE TABLE, INC.; THIRD
SECTOR DEVELOPMENT, INC.;
ASIAN AMERICANS
ADVANCING JUSTICE–
ATLANTA, INC.; and JILL BOYD
MYERS,

        Plaintiffs,

v.

BRIAN P. KEMP, in his official
capacity as Secretary of State for
the State of Georgia,

        Defendant.

CIVIL ACTION FILE

NO. 1:17-cv-1397-TCB

# **O R D E R**

This case comes before the Court on Plaintiffs' motion for

attorneys' fees and expenses [43].

## I.  Background

On April 20, 2017, Plaintiffs[1] filed this lawsuit challenging

Georgia's voter-registration scheme as violating the National Voter

Registration Act of 1993 ("NVRA"). Specifically, Plaintiffs contended

that Georgia's voter-registration requirements were inconsistent with

and preempted by 52 U.S.C. § 20507(a)(1), which requires states to

"ensure that any eligible applicant is registered to vote in an election"

for federal office if the applicant submits her registration form more

than thirty days prior to the election. The day they filed their

complaint, Plaintiffs also filed a motion for a temporary restraining

order and preliminary injunction [2]. On April 25, Plaintiffs filed an

amended complaint to add Plaintiff Jill Boyd Meyers [17].

On May 4, after briefing and oral argument, the Court granted

Plaintiffs' motion for a preliminary injunction [29]. Kemp answered the

amended complaint [33]. However, before the parties filed a joint

preliminary report and discovery plan, the case settled.

---

[1] Plaintiffs in this case are five organizations that conduct voter-registration activities within Georgia's sixth congressional district and an individual who attempted to register to vote after moving into the sixth district subsequent to the special election.

On October 11, the parties filed a proposed consent order [41], which the Court entered on October 17 [42], enjoining the Secretary of State and his agents and servants from enforcing a voter registration deadline that violates Section 8 of the NVRA.

## II. Legal Standard

The parties do not dispute that Plaintiffs are the prevailing parties in this action and are entitled to reasonable attorneys' fees and litigation expenses pursuant to 52 U.S.C. § 20510(c). They do dispute, however, the reasonableness of the expenses Plaintiffs seek.

When assessing an award of attorneys' fees, a district court must first calculate the lodestar amount—the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The lodestar "yields a fee that is presumptively sufficient . . . ." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

"The district court is 'itself an expert' on the reasonableness of hourly rates and 'may consider its own knowledge and experience' on

the topic." *Dial HD, Inc. v. ClearOne Commc'ns*, 536 F. App'x 927, 930 (11th Cir. 2013) (quoting *Loranger*, 10 F.3d at 781).

After calculating the lodestar, the Court may adjust the amount based on a number of factors, such as the quality of the results obtained and the legal representation provided. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996).

The party applying for attorneys' fees also "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). To satisfy that burden, the applicant must supply the Court with

> specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

4

*Id.* (alteration in original) (citations omitted in original) (quoting *Norman*, 836 F.2d at 1303).

In determining a reasonable number of hours, the Court must exclude hours that were not "reasonably expended" due to, for example, overstaffing. *Hensley*, 461 U.S. at 434 (quoting S. REP. NO. 94-1011, at 6 (1976)). Thus, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Id.* If counsel fails to do so, the Court must do it for them. *Barnes*, 168 F.3d at 428. "Work performed by multiple attorneys, however, is not subject to reduction where the attorneys were not unreasonably doing the same work." *Webster Greenthumb Co. v. Fulton Cty.*, 112 F. Supp. 2d 1339, 1350 (N.D. Ga. 2000).

The Eleventh Circuit's decisions regarding attorneys' fees generally "contemplate a task-by-task examination of the hours billed." *Barnes*, 168 F.3d at 429. However, the Eleventh Circuit has also stated that "[w]here fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of judicial resources" and

5

therefore is not required. *Loranger*, 10 F.3d at 783. In such cases, it is sufficient for the court to make "across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure," so long as it provides "a concise but clear explanation of its reasons for the reduction." *Id.*

Here, given the high number of hours billed and the number of attorneys who billed, the Court cannot feasibly and expeditiously engage in an hour-by-hour review of Plaintiffs' requested fees; rather, any reduction in fees should cut across the board. The Court will determine the proper billing rates and then will determine the appropriate number of hours to have billed.

## III. Discussion

Plaintiffs seek attorneys' fees and costs in the amount of $188,901.99. Specifically, Plaintiffs seek $184,084 in fees, representing 351.38 hours of time for eight attorneys, and $4,817.99 in litigation expenses. Kemp requests an across-the-board cut of fifty percent for the hours *and* fifty percent for the billing rate—which amounts to

6

$50,838.99.[2] For the reasons discussed, the Court will grant Plaintiffs' motion in part, but will reduce the billing rate by twenty-five percent and the hours billed by fifteen percent. Therefore, Plaintiffs are entitled to fees and expenses in the amount of $122,171.54.

### A.    Billing Rates

Plaintiffs seek the following hourly billing rates for their attorneys: Ira Feinberg, Hogan Lovells partner: $650; Paul Wiley, Hogan Lovells associate: $400; Emily Goldman, Hogan Lovells associate: $400; Andrew Harris, Hogan Lovells pending bar admission: $300; Bryan Sells, local counsel: $550; Ezra Rosenberg, Lawyers' Committee Co-Director: $650; Julie Houk, Lawyers' Committee Senior Special Counsel, $550; and John Powers, Lawyers' Committee Counsel: $400.

The Court will not grant Plaintiffs the full amount sought for two reasons. First, although Plaintiffs attempt to persuade the Court otherwise, this is a relatively straightforward case. This was a single-

---

[2] $184,084 x 0.5 (reducing hours by fifty percent) x 0.5 (reducing billing rate by fifty percent) = $46,021 for fees. $46,021 + $4,817.99 (costs) = $50,838.99.

count statutory construction action. The majority of the cases to which Plaintiffs cite involve complex federal litigation, not election law involving only one relatively straightforward issue. *See, e.g.*, *In re Application of Sergeeva*, No. 1:13-cv-3437-LMM, 2015 WL 12910726, at *1 (N.D. Ga. Nov. 4, 2015) (involving international law and complex discovery regarding an attempt to obtain limited discovery for use in court proceedings pending in the Russian Federation). Similarly, the Laffey Matrix, the *Fulton County Daily Report*'s "Going Rate" survey, and the Price Waterhouse Coopers survey data, all of which Plaintiffs point to in an attempt to justify their billing rates, involve commercial litigation cases, which are different from election law cases.

Courts have recognized that similar, NVRA-based cases involve lower market rates than do other types of civil litigation. *See, e.g.*, *Harkless v. Husted*, No. 1:06-cv-2284, 2011 WL 2149179, at *19–20 (N.D. Ohio Mar. 31, 2011) (reducing hourly rates to range from $70 to $340 in case involving violation of the NVRA because "the legal analysis in this case was not particularly complex").

Second, the Court questions whether Plaintiffs' attorneys exercised good judgment in the billing rate sought. As one example, counsel is seeking an hourly rate of $300 for someone who has not yet passed the bar. This amount is excessive and raises concerns about counsel's billing judgment.

However, the Court also is not persuaded by Kemp's argument that a fifty-percent cut is appropriate. As Plaintiffs point out, if the case had been completely straightforward, the parties could have resolved it at minimal expense in response to Plaintiffs' pre-litigation notice letter. Plaintiffs also provided a declaration from William Custer, a partner at Bryan Cave LLP in Atlanta, regarding the reasonableness of the rates and the time spent, and opining that the attorneys' skill and expertise allowed them to work quickly to obtain the sought result. However, this alone cannot establish market rate. *See Jan R. Smith Constr. Co. v. DeKalb Cty.*, 18 F. Supp. 2d 1365, 1374 (N.D. Ga. 1988) ("Testimony that a given fee is reasonable is . . . unsatisfactory evidence of market rate.") (quoting *Norman*, 836 F.2d at 1299). The Court finds that a cut of twenty-five percent is appropriate for billing rates.

## B.    Hours Billed

The number of hours Plaintiffs seek is also somewhat excessive. Plaintiffs seek compensation for 62 to 74.6 hours for writing and editing the complaint and motion for a preliminary injunction; a total of 132.9 hours before Kemp had filed his response brief; 69.6 to 72.9 hours on a reply to Kemp's response brief; three attorneys (two out of state) to handle the preliminary injunction hearing; 23 hours between the Court's order on the preliminary injunction and the date of the Rule 26 conference (including between 12 and 13.9 hours on analyzing registration data); four attorneys to prepare for and participate in the conference; 30.8 hours between the conference and the date the parties resolved the substantive merits; and 65 hours regarding attorneys' fees.

Kemp urges the Court to cut the hours Plaintiffs' counsel seeks, arguing that the case involved a straightforward, single-count issue of statutory construction and did not require work by eight attorneys at high rates, three attorneys' presence at the preliminary injunction hearing, or the level of research and discussions counsel expended on the issue of attorneys' fees. The Court agrees that a cut in hours is

appropriate, but not at the level Kemp requests. A case that may appear to be "simple" in hindsight often does not appear so straightforward during the actual litigation. Therefore, the Court finds that a more modest cut of hours is appropriate.

Initially, the Court notes that Plaintiffs have provided declarations that counsel made significant reductions in the fee claim to exclude excessive, duplicative, or insufficiently documented time. Further, although the case did end in a settlement, Kemp initially opposed Plaintiffs' claim and contested the motion for preliminary injunction. However, the Court does not find that all the time for which Plaintiffs seek reimbursement was reasonable. Although the Court does not find that a fifty-percent cut is appropriate, it will reduce the hours for which Plaintiffs may be reimbursed by fifteen percent.

The Court feels that the time spent drafting the complaint and preliminary injunction motion is somewhat excessive. The complaint consisted of a single claim and thirty-seven paragraphs, yet Plaintiffs' counsel billed between 62 and 74.6 hours drafting it and the motion. Counsel continued to bill before Kemp filed his response, including

11

researching claims that were not added, adding Myers as a Plaintiff, and performing additional research. This is slightly excessive.[3]

Kemp's response brief was nine pages, yet Plaintiffs' counsel spent between 69.6 and 72.9 hours on that reply. As Plaintiffs point out, their reply required counsel to investigate the information in the declarations Kemp provided in support of his response and obtain additional evidence. However, this still cannot justify the full amount sought. Further, the Court cannot deem it necessary for three experienced attorneys to handle the hearing on the preliminary injunction motion.

The remainder of the time billed by Plaintiffs' counsel suffers from similar problems. Although the work on analyzing voter registration data after the Court granted a preliminary injunction (to ensure timely processing of new registration forms and that the new applicants' votes would count) was not entirely unnecessary, the Court finds it excessive.

---

[3] However, the Court does not agree that the time spent adding Myers as a Plaintiff was unnecessary; rather, as Plaintiffs point out, she was added at a point when they were uncertain whether Kemp would challenge the organizational Plaintiffs' standing, and they viewed her personal testimony as compelling if the case proceeded to trial.

Further, billing for six attorneys in settlement negotiations and billing 65 hours on attorneys' fees are excessive.

Ultimately, as discussed, the Court agrees that the time Plaintiffs' attorneys seek to recoup is somewhat excessive. However, a fifty-percent cut is not appropriate. Rather, the Court will cut the time by fifteen percent.[4]

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for attorneys' fees and expenses [43] is granted in part. Plaintiffs are awarded fees and expenses in the total amount of $122,171.54. The Clerk is directed to close this case.

IT IS SO ORDERED this 11th day of April, 2018.

Timothy C. Batten, Sr.
United States District Judge

---

[4] Plaintiffs initially sought $4,967.99 in costs and expenses. Kemp challenged only a $150 pro hac vice application fee, which Plaintiffs agreed to withdraw. Therefore, the Court will award Plaintiffs the remainder of the amount they seek in costs—$4,817.99.